# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| CHRISTOPHER FONTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 25-cv-00235-RTG |
| | ) |
| JOHN DOE DA, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S RECOMMENDATIONS

Plaintiff objects to the Recommendation's conclusion that absolute prosecutorial immunity bars his claims. The Recommendation relies on *Imbler v. Pachtman*, 424 U.S. 409 (1976), in a blanket, categorical way without examining or engaging with any of the actual and specific conduct alleged, the limits that the functional immunity test actually imposes, or the procedural framework Colorado law requires.

The Recommendation contains no discussion of the DA's coercive demand that Plaintiff appear, without counsel, before the DA himself; no explanation of how a *forced* off-record effort to extract a guilty plea is 'advocative'; and no identification of any Colorado statute authorizing the DA to conduct a judge-free Quasi-Hearing . The absence of analysis amounts to endorsement. That is legally unsustainable.

When Plaintiff's allegations and Colorado's governing law are taken as true, the district attorney's actions were outside any legitimate "judicial phase" of the criminal process and beyond any authority granted under state and federal law. As such, *Imbler* cannot control and absolute immunity cannot apply on these facts.

**Pro Se Status**

Plaintiff is mindful that courts routinely state they cannot "advocate" for a pro se litigant. That principle is correct. But in practice, this caution sometimes expands beyond its purpose and results in pro se filings receiving less meaningful consideration than the law requires. Plaintiff does not ask the Court to rewrite his pleadings or invent claims that do not exist. He asks that the Court evaluate the claims actually presented, on their merits, with the same seriousness afforded to any represented litigant.

The Recommendation appears to overlook or minimize several of Plaintiff's central allegations—particularly the allegations describing coercion, denial of counsel, the absence of judicial oversight, and the district attorney's ultra vires simulation of a judicial proceeding. These are not technicalities or omissions; they are the core of the constitutional injury. When such allegations are not addressed, the effect is not simply strict construction of a pro se pleading, but a denial of the meaningful review that § 636(b)(1) and Rule 72(b) require.

Plaintiff recognizes that pro se cases are often complex and time-consuming, and that the judiciary sees a high volume of them. But this case presents serious issues of due process, prosecutorial authority, and the structure of Colorado's criminal procedure. No attorney would likely to take such a case— as its perceived monetary value is low, and the only person capable of bringing these issues to the Court's attention is a pro se citizen. Plaintiff therefore respectfully asks the Court to engage fully with the factual allegations and legal arguments presented. The constitutional stakes are significant, and the questions raised here deserve the same careful analysis that would be given if counsel had drafted the complaint.

Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the Court must conduct de novo review of any portion of the Magistrate Judge's Recommendation to which specific objections are made. Plaintiff's objections below identify specific factual and legal errors in the immunity analysis and in the Recommendation's characterization of the allegations.

Accordingly, the district judge must independently review the record, the governing law, and the Complaint, rather than defer to the Recommendation's conclusions.

## Objection: The Recommendation Misapplies Absolute Prosecutorial Immunity and Ignores Plaintiff's Coerced Participation in Extra-Judicial Conduct

The Recommendation applies absolute immunity far beyond what Imbler allows, and in doing so, it silently presumes that a district attorney may compel a defendant to appear without counsel, bypass the court entirely, simulate an arraignment style interaction, and attempt to extract a guilty plea off-record—all before any judge has advised the defendant of his rights. Nothing in Colorado law authorizes such a practice, and nothing in Imbler or its progeny immunizes it. The Recommendation's core sentence—that Plaintiff failed to allege administrative or investigative acts "unrelated to preparation for prosecution"—misstates the legal standard, misstates the Complaint, and effectively transforms every coercive pre-arraignment action into an immune prosecutorial function. That cannot be the law.

## I. Colorado Law Confirms the DA's "First Appearance" Meeting Was Outside Any Lawful Judicial or Plea Process

**A. Colorado law does not require – and does not authorize – a defendant to meet with the DA before seeing a judge.**

This case arose from a defective third-degree trespass charge in El Paso County initiated solely by a police "Summons and Complaint." Under Colorado law, a defendant in that posture must be advised and arraigned in court before a judge in the court having jurisdiction over the offense. At arraignment, it is the court, not the district attorney, that: informs the defendant of the charges, possible penalties, and constitutional rights, and takes a plea if any. They are exclusively judicial functions, and Colorado procedure, and basic due process, place the critical protections of advisement and plea-taking solely in the hands of the judge. These requirements reflect long-standing constitutional principles and exist precisely because waivers of fundamental trial rights cannot be presumed from silence, confusion, or informal off-the-record encounters. They must be

knowing, intelligent, voluntary, and recorded in open court. There is no statute, rule, or case that requires, or even contemplates, that a criminal defendant is obligated to report first to the district attorney, sit in a private office with the prosecutor, and talk about guilt or a plea before any judge has reviewed the charge or advised the defendant of rights. The "first appearance" meeting Plaintiff describes is not a legally required step; it is an internal administrative practice the DA's office chose to create.

By design, then, the judge—not the DA—controls the point at which a defendant is asked to plead and whether any waiver of rights is valid. The DA's role is to appear as an advocate before the court, not to conduct a shadow arraignment in his office. When a prosecutor tries to function as the first and only "advising authority," solicits a confession or guilty plea off the record, and then directs when and how the defendant will be sent to an actual judge, he is stepping into a judicial role he does not possess. Colorado law does not deputize prosecutors as de facto judges.

Plaintiff alleges he was told, implicitly and explicitly, there would be "consequences" if he did not attend and cooperate with this meeting, and that he was treated as if he had no choice but to submit. Yet there is no legal authority making such a meeting mandatory or giving the DA power to insert himself as a compulsory gatekeeper between the defendant and the court. The DA was not performing a traditional judicial-phase function; he was creating his own pre-judicial process with no statutory or constitutional foundation.

### 1. Third-degree trespass is a jail-eligible offense, so full criminal procedures and right to counsel apply.

Under C.R.S. 18-4-504, third-degree criminal trespass is classified as a petty offense (with a felony enhancement in limited agricultural-land situations).

For petty offenses committed on or after March 1, 2022, C.R.S. 18-1.3-503(1.5) provides that the penalty is up to 10 days in county jail and/or a fine of up to $300. That makes third-degree trespass a jail-eligible criminal offense, not a simple civil infraction.

Because jail is on the table, this is not a "fine only" matter that can be resolved informally without constitutional protections. It triggers the ordinary criminal process and collides head-on with the Sixth Amendment and Colorado's own right to counsel at critical stages, including plea and *subsequent* meaningful plea bargaining.

**2. Colorado law defines arraignment and pleas as judicial acts conducted in open court, not in a DA's office.**

Colorado's criminal procedure statutes and rules say exactly who conducts arraignments and accepts guilty pleas, and where that happens:

- C.R.S. 16-1-104(2) defines "arraignment" as "the formal act of calling the defendant into open court, informing him of the offense with which he is charged, and the entry of a plea."

- Colorado Rule of Criminal Procedure 10 provides that "[t]he arraignment shall be conducted in open court, informing the defendant of the offense with which he is charged, and requiring him to enter a plea to the charge" and that "the defendant shall be arraigned in the court having trial jurisdiction in which the … complaint is filed."

So even for a petty, jail-eligible trespass case in county court, the prescribed sequence is:

> summons/complaint → filing → arraignment in open court before a judge → plea entered on the record.

Nothing in the statutes or rules authorizes replacing that with a private, off-record "conference" in the DA's office.

Guilty pleas are treated the same way:

- C.R.S. 16-7-206 and 16-7-207 govern guilty pleas and make clear that specific conditions must be satisfied by the court before a guilty plea is accepted: the court must advise the defendant of rights and maximum/minimum penalties, and the plea's effect is tied to judicial acceptance.

- Colorado cases recognize these advisements as mandatory due-process prerequisites when a plea is taken.

In other words:

> Colorado law permits a district attorney to negotiate pleas, but the DA has no legal authority to conduct an arraignment or accept a guilty plea. Only a judge, in open court, on the record, can do that.

The DA's attempt to call Plaintiff into a "first appearance" setup, talk about guilt, and probe

whether Plaintiff would plead out before any arraignment or judicial advisement was not an arraignment, was not a lawful plea proceeding, and was not a recognized substitute under Colorado law. It was, at best, an invented shortcut; at worst, a shadow hearing that sidestepped the statutory framework.

### 3. Colorado's plea-bargaining statute reinforces that uncounseled, off-record plea pressure in a jail-eligible case is improper.

Colorado law also speaks directly to how district attorneys are supposed to deal with plea discussions:

- C.R.S. 16-7-301 provides that "[t]he district attorney should engage in plea discussions or reach plea agreements with the defendant only through or in the presence of defense counsel except where the defendant is not eligible for appointment of counsel because the charged offense does not include a possible sentence of incarceration, or because the defendant refuses appointment of counsel and has not retained counsel."

- House Bill 13-1210 was enacted to make Colorado law consistent with *Missouri v. Frye* and *Lafler v. Cooper,* reinforcing the Sixth Amendment right to counsel during plea bargaining and guaranteeing people charged with misdemeanors or petty offenses the right to obtain counsel **before** plea discussions with the prosecutor.

In a trespass case carrying potential jail time, Plaintiff was entitled to counsel (or a valid waiver) before the DA tried to talk him into a guilty plea. Plaintiff alleges he had applied for counsel, the DA knew it, and yet he was summoned to a one-on-one meeting, without counsel, to talk about guilt and possible resolution.

Thus, even if one characterizes the DA's conduct as "plea discussions" rather than the pseudo-arraignment it actually was, the setting described – uncounseled, off-record, pre-arraignment, in a jail-eligible case – directly conflicts with Colorado's plea-bargaining framework and with the Supreme Court's recognition of plea bargaining as a "critical stage" for Sixth Amendment purposes.

### 4. The DA's role here was ultra vires: he exceeded the lawful scope of prosecutorial authority and operated under color of law, not under law.

Taken together, these statutes show:
- Arraignment is a judicial event in open court, controlled by the judge.

- Guilty pleas are accepted, and rights are waived, only by the court after mandatory advisements and findings on the record.
- In jail-eligible cases, plea discussions with an indigent (and disabled) defendant are supposed to happen through or in the presence of counsel, not in a one-on-one ambush meeting.

The DA's conduct, as alleged, does not fit any of those authorized roles. He did not act as a courtroom advocate implementing the existing process; he created and ran his own process, then used his badge and title to compel Plaintiff into it under threat of "consequences." That is acting under color of law and outside the lawful authority of a prosecuting attorney – ultra vires in relation to the statutory scheme.

Colorado's criminal code underscores that public officials can exceed their lawful authority:

- C.R.S. 18-8-404 (first-degree official misconduct) criminalizes a public servant's knowing decision to "exceed his lawful authority" with intent to obtain a benefit or maliciously cause harm.
- C.R.S. 18-8-403 (official oppression) addresses misusing office to subject another to mistreatment or arrest not authorized by law.

Plaintiff is not asking this Court to prosecute the DA under these statutes, but they confirm the basic premise: policy or custom cannot lawfully expand a DA's role beyond what the statutes and rules authorize. When a prosecutor designs or participates in a procedure that supplants law and required judicial steps, he is not simply "acting as a prosecutor badly"; he is acting outside the prosecutorial function the law recognizes.

Absolute immunity does not attach to conduct just because a prosecutor is the one performing it. The Supreme Court's functional test turns on what the official was doing, not what office he held. When the DA runs his own shadow hearing in defiance of the statutory procedures for arraignment and pleas, he cannot cloak those ultra vires acts in *Imbler*'s protection.

That is exactly why the magistrate's single sentence—reducing everything to "preparation for the initiation of a prosecution"—is inadequate. It ignores the detailed procedural structure

Colorado has enacted and the way Plaintiff was forced into a non-judicial, uncounseled, off-record process that statutes and rules do not recognize.

### B. A prosecutor may not exploit a defendant's lack of knowledge and lack of counsel to manufacture a "waiver" of rights.

Our constitutional system rests on the premise that rights are inalienable; they do not depend on a person's sophistication or on whether the person happens to invoke the correct legal language. Courts have repeatedly held that fundamental rights—such as the right to counsel, the privilege against self-incrimination, and the right to trial—cannot be treated as waived merely because a defendant is ignorant of them or fails to protest. Presuming waiver from a silent or confused record is impermissible. That is precisely why formal arraignment and plea colloquies exist.

In this case, Plaintiff alleges that the DA deliberately leveraged Plaintiff's absence of counsel to try to extract an off-record "admission" before any judge ever saw the case. Plaintiff had applied for counsel, and the DA was aware of this, but the DA nonetheless(with or without counsel), wrongfully attempted to pressure Plaintiff to discuss the merits of the charge and to consider pleading guilty in a closed-door meeting, implicitly under threat of "consequences" if he did not comply.

That conduct is fundamentally incompatible with due process. A prosecutor cannot (1) circumvent the judicial advisement process, (2) pressure a defendant in an unofficial setting, and then (3) pretend that any acquiescence there amounted to a valid waiver of constitutional rights. Waiver cannot be conjured by exploiting a layperson's lack of knowledge or by creating the illusion that an off-record meeting is part of a required "court process." The ethical rules governing prosecutors reflect this same concern: prosecutors are specifically cautioned not to seek waivers of significant pretrial rights from unrepresented defendants. The DA's actions, as alleged, did exactly that.

### C. The DA's conduct was not "intimately associated with the judicial phase" under Imbler, but an extra-judicial usurpation of process.

*Imbler* grants absolute immunity only for actions that are "intimately associated with the judicial phase of the criminal process," such as filing charges, preparing for trial, presenting the state's case, and engaging in ordinary plea negotiations that are tethered to the court's proceedings. It does not grant blanket immunity for everything a prosecutor chooses to do with the leverage of his office.

Here, the DA's conduct, as pled, did not "assist" any judicial proceeding; it replaced it. There was no lawful arraignment, no judicial review of probable cause, no on-the-record advisement, and no appearance in front of a judge before the DA tried to secure a plea. The DA did not approach Plaintiff as a litigant in a pending courtroom process; he approached Plaintiff as an unrepresented target in a private administrative encounter, before any judge had participated at all. The goal was not to prepare for a hearing, but to avoid one—by seeing if Plaintiff could be induced to incriminate himself or plead guilty without ever invoking judicial scrutiny.

That is qualitatively different from the protected advocacy at issue in *Imbler* and its progeny. A prosecutor who uses his title to create a false impression of judicial authority, conducts an off-record pseudo-arraignment/hearing, and attempts to secure waivers of rights outside any formal proceeding is not acting as an "advocate for the state in court." He is acting as an extra-judicial decision-maker, effectively impersonating a judicial officer and usurping a role reserved to the judiciary.

Labeling this as "plea bargaining" does not cure the problem. Traditional plea bargaining presupposes that (1) the defendant has been brought before a court, (2) the defendant has been advised of rights or has counsel, and (3) any agreement will be presented to and approved by a judge. In contrast, Plaintiff alleges that the DA sought to obtain a plea-like outcome without any of those safeguards. That is not an act "intimately associated with the judicial phase"; it is an attempt to keep the matter away from the judicial phase altogether.

**D. The Recommendation's bare reliance on Imbler ignores these distinctions and the absence of any state-law authority for what occurred.**

The Recommendation treats the DA's conduct as if it were just another instance of routine advocacy during a pending prosecution, and then cites *Imbler* to conclude that absolute immunity applies. What it does not do is engage with the specifics of Plaintiff's allegations or with Colorado's procedural framework:

- It does not identify any statute, rule, or precedent that authorizes or requires a defendant to meet with the DA before appearing before a judge.
- It does not address the fact that arraignment, advisement of rights, and acceptance of pleas are judicial functions that cannot be delegated to a prosecutor's office.
- It does not consider the ethical and constitutional constraints on obtaining waivers and incriminating statements from an unrepresented defendant who has requested counsel.
- It does not explain how a private, off-record administrative meeting conducted before any judicial involvement qualifies as conduct "intimately associated with the judicial phase of the criminal process."

Without addressing those points, the Recommendation effectively treats *Imbler* as a blanket shield for anything a DA does once a case number exists. That is not the law. Absolute immunity is functional and limited. It protects genuine advocacy for the state in connection with judicial proceedings; it does not license prosecutors to create their own shadow procedures, to usurp judicial roles, or to coerce uncounseled defendants into forfeiting rights in a void of legal authority.

**E. The Recommendation's key sentence is both factually wrong and legally overbroad.**

The Recommendation states:

> "Here, Plaintiff has not alleged that Defendant took any administrative or investigatory actions that did not relate to Defendant's preparation for the initiation of a prosecution or for judicial proceedings against Plaintiff."

That formulation does two things wrong at once.

First, it is factually inaccurate. The Amended Complaint expressly alleges that:

- The "first appearance center" was an administrative intake location with no judge, no record, no advisement, and no formal court proceeding;
- Defendant acted as a gatekeeper controlling access to the court, rather than as an advocate in

    court;

- Plaintiff was forced into a private, off-record meeting under threat of further arrest or "consequences," with no rights read and no counsel present; and
- Defendant gave misleading legal advice to an unrepresented person in order to delay or suppress filings and keep the matter away from a judge.

Those are *quintessentially administrative* and extra-judicial acts. At the Rule 72 / § 1915 stage, those allegations must be accepted as true, not re-characterized as "advocacy" in a conclusory way.

Second, the wording is legally overbroad. *Imbler* does not say that any act that "relates to" preparation for a possible prosecution is automatically absolutely immune. The test is whether the challenged function is "intimately associated with the judicial phase of the criminal process" – i.e., charging, presenting the case, or ordinary plea bargaining within an ongoing court proceeding. Administrative or investigative acts, even if connected to a case, fall outside absolute immunity.

By stating that Plaintiff has not alleged "administrative or investigatory actions that did not relate to preparation for prosecution," the Recommendation effectively reads the functional test out of existence and collapses everything a DA does into "preparation," and thus into immunity. That is not what *Imbler* or its progeny hold.

**F. The Recommendation ignores the separate constitutional problem of compelled participation under duress.**

The Recommendation also fails to address a core part of Plaintiff's claim: Plaintiff is not simply complaining about what the DA did internally in his office; he is challenging the fact that Plaintiff was forced to participate in that extra-judicial process under duress.

A district attorney is free to sit at his desk, review reports, and perform administrative or investigative tasks without Plaintiff ever being present. What he is not free to do is:

- Require an uncounseled defendant to report to a non-judicial "first appearance" center as if it were a court;
- Imply or threaten that there will be further arrest or negative "consequences" if the defendant refuses;
- Block or delay the defendant's access to a neutral judge and formal arraignment; and

- Use that coerced, off-record encounter to pressure the defendant to discuss guilt or to waive constitutional rights.

Those allegations go to misuse of state power against Plaintiff himself – denial of timely access to court, interference with the right to counsel after Plaintiff had applied for counsel, and coercive pressure to incriminate himself or plead guilty without any of the safeguards that exist in a courtroom. The Recommendation does not mention, let alone analyze, this compelled participation under duress. It treats everything as if Plaintiff were only challenging "how the DA prepared the case," rather than what the DA did to Plaintiff outside any formal proceeding. That omission is critical.

Even if some internal acts might be characterized as "preparation for prosecution," the use of state power to force Plaintiff into that off-record process is itself a distinct constitutional violation. It cannot be immunized simply by labeling the entire sequence "related to initiation of prosecution."

**G. Pfeiffer and Hammond do not control because this was not ordinary investigation or plea bargaining.**

The Recommendation leans on decisions such as *Pfeiffer* and *Hammond* for the proposition that a prosecutor's failure to investigate more thoroughly, or his conduct during plea negotiations, is normally protected by absolute immunity. But those cases involve traditional core functions: deciding how much to investigate before filing charges, and negotiating a plea within the context of an existing court case, under judicial supervision and with the safeguards of formal proceedings.

Plaintiff does not challenge those kinds of decisions. He challenges a very different category of conduct: operating a non-judicial intake process, coercing an uncounseled defendant into a private meeting under threat of "consequences," blocking access to a judge, and giving misleading legal advice to suppress or delay filings – all before any legitimate on-the-record advisement. That is not investigation in support of a charging decision, nor is it ordinary plea bargaining within a court process. It is a gatekeeping practice that keeps defendants away from the court and attempts to

resolve cases in a quasi-administrative vacuum. *Pfeiffer* and *Hammond* do not address, much less bless, that kind of extra-judicial regime.

### H. At the screening stage, close functional questions should not be resolved against a pro se plaintiff with prejudice.

Absolute immunity is supposed to be decided function-by-function. The court must look at what specific acts are alleged and determine whether each is advocative, administrative, or investigative. The Recommendation instead labels the entire course of conduct "preparation for prosecution" in a single paragraph and, on that basis, attempts to dismiss the case with prejudice as "frivolous."

At the § 1915(e) stage, Plaintiff's detailed factual allegations – describing an administrative "first appearance" process, coercive off-record meeting, denial of timely access to a judge, and pressure on an uncounseled defendant to waive rights – must be accepted as true. Any close questions about whether each act is administrative or advocative should not be resolved against a pro se litigant in a sua sponte dismissal with prejudice.

The Recommendation also cites § 1915(e)(2)(B)(i) ("frivolous"), but the only stated ground is absolute immunity. That fits, if at all, under §1915(e)(2)(B)(iii) (seeks monetary relief from an immune defendant), not the "frivolous" provision. See *Neitzke v. Williams, 490 U.S. 319 (1989).* Plaintiff's amended complaint cites specific Supreme Court and Tenth Circuit authority on the limits of prosecutorial immunity and pleads detailed facts about an administrative gatekeeping process. Whatever the ultimate resolution, those allegations are not frivolous, and labeling them as such at screening is incorrect and prejudicial.

### I. Leave to amend and systemic concerns.

At a minimum, dismissal with prejudice at this stage is improper because Plaintiff's amended complaint already alleges a factual scenario in which the District Attorney acted outside any prosecutorial function protected by absolute immunity. Plaintiff has alleged that the DA participated in and enforced a non-judicial "first appearance" that compelled uncounseled

defendants into off-record meetings, obstructed access to a judge, and substituted administrative coercion for statutorily required procedures. The acts were outside any legitimate judicial-phase function, and contrary to Colorado's procedural and constitutional framework. These allegations, taken as true, fall well outside the protected core of advocacy contemplated by *Imbler*, *Buckley*, and *Kalina*

Because the amended complaint already pleads non-advocative, administrative, and ultra vires conduct, the Court cannot conclude that amendment would be futile. To the extent the Court believes additional detail regarding Colorado statutes, local procedures, or the structure of the "First Appearance Center" is necessary, Plaintiff respectfully seeks leave to amend or supplement to provide those specifics. Plaintiff also seeks leave to amend to name the County if discovery confirms—and early allegations already indicate—that this "DA-first, judge-second" process is an institutional practice. Such amendment is particularly appropriate where immunity depends on the precise function the official was performing, and where the challenged conduct plausibly reflects an administrative or municipal practice, not state-level prosecutorial decision-making.

The proper remedy at this stage is leave to amend—not dismissal with prejudice—to clarify which acts were administrative or extra-judicial and, if warranted, to assert Monell claims against the County or other responsible entities that maintained the unconstitutional intake and gatekeeping system.

**J. The Recommendation fails to address alternative relief or amendment standard**

The Recommendation also overlooks that Plaintiff seeks declaratory relief addressing the constitutionality of the DA's use of a non-judicial "first appearance" intake process and its coerced pre-arraignment meetings with uncounseled defendants. Even if *Imbler* is stretched far beyond its intended scope, declaratory relief is not barred by *Imbler*, particularly where the criminal case has concluded and Plaintiff seeks prospective clarification of an ongoing administrative practice. The Recommendation assumes, without analysis, that *Imbler* forecloses all relief.

Even after one amendment, courts must grant further leave where amendment is not futile and where the claims turn on functional distinctions between advocative and administrative conduct. Should the Court determine that any allegation relating to the intake system requires clarification or that municipal liability should be more explicitly pleaded, Plaintiff respectfully requests leave to amend for that purpose. The Recommendation does not consider this less drastic alternative because it does not engage with the allegations; it simply assumes that the DA's presence ends the inquiry and compels dismissal with prejudice. This is contrary to established screening standards requiring courts to permit amendment where defects may be curable.

**K. Summary of the objection.**

In short, Plaintiff has alleged that the DA did far more than make charging decisions or negotiate a plea *in* court. He operated a non-judicial intake process, compelled Plaintiff's participation under threat of arrest, blocked access to a judge, and tried to extract waivers and a plea from an uncounseled disabled defendant outside any formal proceeding. Those are not acts "intimately associated with the judicial phase of the criminal process" within the meaning of *Imbler*. They are administrative and extra-judicial abuses of authority, and retaliation directed at Plaintiff himself. Because the DA's conduct, as alleged, falls outside the protected core of prosecutorial advocacy recognized by *Imbler*, absolute immunity should not bar Plaintiff's claims, and the Recommendation should be rejected on this ground.

DATED: December 7th, 2025
Respectfully submitted,                By:_____
                                          Plaintiff

                                          Christopher Fonte
                                          PO Box 7120 Dillon
                                          Colorado 80435
                                          Ccfo1114@aol.com